IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:99-CR-00071-KDB

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) **ORDER** |
| RUSSELL OWEN MCINTOSH, | )<br>)<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendant Russell Owen McIntosh's Supplemental Motion for a Reduced Sentence under the First Step Act of 2018. (Doc. No. 359).[1] The United States opposes the Motion. *See* Doc. No. 360. The Court has carefully considered the Motion, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

From 1997 until 1999, Russell Owen McIntosh, as part of a drug trafficking organization, distributed powder and crack cocaine in Iredell County, North Carolina. McIntosh was a leader in the organization and directed the activities of at least three others involved in the conspiracy, including Justin McDonald. During his drug trafficking, McIntosh possessed several firearms, including a double-barreled shotgun, a pump-action shotgun, three pistols, and a revolver.

---

[1] McIntosh also filed a Supplemental Motion to Reduce Sentence under First Step Act 2018 in another matter. *See* 5:99-cr-8, Doc. No. 25. However, McIntosh subsequently filed a Motion for Voluntary Dismissal. *See* Doc. No. 27. Therefore, McIntosh's Motion for Voluntary Dismissal, (5:99-cr-8, Doc. No. 27), is granted for the reasons stated in the Motion, and the Supplemental Motion to Reduce Sentence, (5:99-cr-8, Doc. No. 25), is denied as moot.

1

In February 1999, Robin and Kimberly Rhyne and their two-year-old son, Hunter Rhyne, were found murdered in Statesville, North Carolina. *See State v. McDonald*, 180 N.C. App. 693, 639 S.E.2d 142 (2006). Robin and Kimberly used crack cocaine and bought their supply from Deek Lackey, who sold crack for McDonald and McIntosh. *Id*. After meeting up with Robin to theoretically buy his Porsche, McDonald murdered him after traveling with him in his Porsche to a location where McDonald and McIntosh conducted drug transactions. *Id*. Robin died from four gunshot wounds to the head, and he suffered injuries consistent with defensive wounds to the hand and arm. *Id*.

When Robin did not return and McDonald was seen driving the Porsche, Kim demanded to know where her husband was and threatened to "tell the police where every crack house in town was." *Id*. The next day, McIntosh and McDonald abducted Kim and Hunter Rhyne from their home and took them "to a remote wooded area where McIntosh had formerly resided." *Id*. Both Kim and Hunter were then shot and killed. *Id*. When police found Kim Rhyne's body, she was naked, except for socks on her feet, and she had been shot nine times — seven times in her head and face. *Id*. She also had bruises, scrapes, and cuts on her feet, legs, and knees. *Id*. Hunter Rhyne suffered a single gunshot wound to the back of his head. *Id*.

In March 1999, a grand jury indicted McIntosh on one count of possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841, and one count of distributing a controlled substance, in violation of 18 U.S.C. § 841. (*See* 5:99-cr-8; Doc. No. 1). McIntosh pleaded guilty to these drug-trafficking offenses, and this Court sentenced him to 71 months in prison for each offense, to run concurrently. *See* 5:99-cr-8: Doc. No. 20 at 1.

In November 1999, a federal grand jury again indicted McIntosh and charged him with conspiracy to possess with intent to distribute at least 50 grams of crack cocaine and 500 grams of

2

powder cocaine and conspiracy to possess firearms in furtherance of a drug-trafficking offense. *See* Docs. No. 3, 126. Before trial on these charges, the United States argued that the evidence would show that McIntosh admitted that he shot and killed both Kim and Hunter Rhyne and that he ordered Robin Rhyne's murder because of a drug debt the Rhynes owed him. *See* Doc. No. 155 at 6–9. The United States also proffered that McDonald admitted to an acquaintance that after he and McIntosh kidnapped Kim and Hunter Rhyne, McDonald shot and killed Kim, while McIntosh shot and killed Hunter. *Id.* at 9.

After hearing from the United States during a pretrial motion hearing, this Court noted that the charges against McIntosh related to the murder of the Rhyne family were pending in state court and found that "state court [was] the proper place for resolution of these charges." *Id.*; Doc. No. 354 ¶ 6. The Court also found that the murders were not connected to the drug-trafficking conspiracy charged in the federal case, concluding that "the United States failed to prove that [McIntosh's] participation in the Rhyne family murders was in furtherance" of the drug-trafficking crimes. *Id.*; Doc. No. 204 at 3. Accordingly, the Court precluded the United States from introducing evidence of the murders against McIntosh at trial. *Id*. Ultimately, the jury returned a guilty verdict against McIntosh on both counts. *See* Doc. No. 156.

Before sentencing, the United States Probation Office determined that at least 1.5 kilograms of crack cocaine were reasonably foreseeable to McIntosh, triggering a base offense level of 38. Doc. No. 354 ¶ 26. The Probation Office added two-offense levels because McIntosh possessed a dangerous weapon and three offense levels because he was a manager or supervisor of the drug-trafficking organization. *Id*. ¶¶ 27, 29. Based on a total offense level of 43 and a criminal-history category of VI, the Sentencing Guidelines called for a sentence of life in prison.

3

*See* Doc. No. 354 ¶ 106. McIntosh also faced a statutory range up to 20 years in prison for the section 924(o) firearm offense. *Id*. ¶ 105.

At sentencing, the United States presented evidence of drug quantity and evidence that McIntosh obstructed justice, that McDonald threatened to kill the Assistant United States Attorney who prosecuted the case against them, and that McDonald had committed at least one murder related to the drug-trafficking conspiracy. *See* Doc. No. 351 at 6–34. The United States also presented evidence that at least 434 grams of crack cocaine were reasonably foreseeable to McIntosh. Arguing that McIntosh "ruined" a neighborhood in Statesville, maintained a stash of guns, and made dangerous threats, the United States asked the Court to sentence McIntosh at the high end of the guideline range.

The Court overruled the United States argument that a cross-reference should apply based on McIntosh's alleged participation in the Rhyne murders. *Id*. at 3. The Court stated that it "intend[s] to dispose of this case in front of the court and I do not intend to try or pretry the state case." *See* Sentencing Tx. at 65 (Doc. No. 351). In the end, the Court found that the Defendant's correct total offense level was 39 and his criminal history category was VI, for a guidelines range of 360 months to Life. *Id*. The Court consequently imposed a sentence of Life on the Section 841 count and a sentence of 240 months on the Section 924(o) count, to run concurrently. *Id.*

After McIntosh's federal sentencing, the State of North Carolina tried him on the related drug and murder charges. McIntosh eventually pleaded guilty to three counts of accessory after the fact to first-degree murder. *See* Doc. No. 359-2 at 2–5. He was sentenced to between 116 and 149 months in two separate judgments, to be served consecutively. *Id*. McIntosh was released from state custody and began serving his federal sentence in May 2019. *See* Doc. No. 359-1 at 5.

Earlier this year, this Court reduced McIntosh's sentence from Life to 360 months in prison finding that he was eligible for a sentence reduction under Amendment 782. *See* Doc. No. 358. McIntosh now asks this Court [2] to exercise its discretion again under the First Step Act and impose a reduced sentence of 118 months because he already served more than 242 months in state custody. *See* Doc. No. 359.

## II.     LEGAL STANDARD

Finality is a vital attribute of criminal judgments and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion); *United States v. Williams*, No. 5:03-CR-00004-KDB-DSC, 2022 U.S. Dist. LEXIS 63376, at *3 (W.D.N.C. Apr. 5, 2022). Consequently, a sentence of imprisonment is final and may not be modified once it has been imposed except in narrow circumstances as outlined in 18 U.S.C. § 3582(c). Section 3582(c)(1)(B) permits modification if it is expressly permitted by statute. The First Step Act expressly permits the Court to modify a term of imprisonment, and, as such, motions under Section 404 of the First Step Act fall under the purview of 18 U.S.C. § 3582(c)(1)(B).

The First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduces "the statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the

---

[2] As noted above, McIntosh at first filed this Motion in both Case 5:99-cr-71, and in Case 5:99-cr-8. In drafting its response, the United States informed McIntosh and the Court that as First Assistant in the United States Attorney's Office the undersigned Judge signed the indictment in Case 5:99-cr-8 but had entered no appearance in this matter. After holding a teleconference with the parties, defense counsel discussed the matter with McIntosh. McIntosh has informed the Court that he does not wish to have this matter reassigned and consents to this Court ruling on the Motion. *See* Doc. No. 363, p. 2.

Fair Sentencing Act modified the drug quantities required to trigger mandatory minimum sentences for cocaine base (known as crack cocaine) trafficking offenses; it increased the amount required to trigger the five-year mandatory minimum from 5 grams to 28 grams and increased the amount required to trigger the ten-year mandatory minimum from 50 grams to 280 grams. *See United States v. Wirsing*, 943 F.3d 175, 178-179 (4th Cir. 2019) (citing Fair Sentencing Act, § 2, 124 Stat. at 2372). Section 3 eliminated the five-year mandatory minimum for simple possession of crack cocaine. *Id.* (citing Fair Sentencing Act, § 3, 124 Stat. at 2372).

The relevant provisions of the First Step Act apply to "a covered offense," which means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010." § 404(a), 132 Stat. at 5222. The Fourth Circuit has held that the definition of "covered offense" means that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . are eligible" for a sentence reduction under section 404 of the First Step Act, unless they have already moved for relief under section 404 or they received the benefit of the Fair Sentencing Act when they were sentenced. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019); *see also* Section 404(c) of the First Step Act, 132 Stat. at 5222.

At the same time, the First Step Act leaves the decision on whether to grant a sentencing reduction in the discretion of the district court. *See* First Step Act of 2018 § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *see also Wirsing*, 943 F.3d at 186 ("District courts then 'may,' at their discretion, 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'"); *United States v. Venable*, 943 F.3d 187, 194 n.10 (4th Cir. 2019) ("The parties do no dispute that the district court would have the discretion to

6

refuse a reduction once it considers Venable's motion on the merits. . . . Indeed, district courts have frequently exercised their discretion to deny relief, citing any number of policy and case-specific reasons."); *Williams*, No. 5:03-CR-00004-KDB-DSC, 2022 U.S. Dist. LEXIS 63376, at *3.

### III. DISCUSSION

To begin with, the parties, and the Court, agree that McIntosh is eligible for a reduction of his drug-trafficking-conspiracy sentence under the First Step Act because he was convicted of a "covered offense." *See* Docs. No. 359, 360. The Court also recognizes that it has the discretion to grant a reduced sentence based on the grounds McIntosh has advanced. *See Concepcion v. United States*, 142 S.Ct. 2389, 2396 (2022) ("Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them.").

Sentencing Guideline § 5G1.3 provides that: "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment."

McIntosh argues that the Court should exercise its discretion and impose a reduced sentence because under Guideline § 5G1.3 if he had been convicted in state court prior to his federal sentence the Court would have had to run the federal term of imprisonment concurrent to that state term. McIntosh also argues that his post-sentencing rehabilitation warrants a sentence

7

reduction. *See* Doc. No. 359. However, the Court will decline to exercise its discretion to reduce McIntosh's sentence because: (1) having benefitted from his initial argument that the murder-related conduct was not "in furtherance" of his federal drug-trafficking conspiracy the Court will not further reduce his sentence because a different legal position now suits him better; (2) Section 5G1.3(b), which only applies when there is an "undischarged sentence of imprisonment" that "resulted from another offense that is relevant conduct" to the "instant offense," does not apply and the Court will decline to exercise its discretion to apply it; and (3) the 3553(a) factors do not support a sentence reduction.

First, McIntosh, to his benefit, asserted contrary legal and factual positions in the federal case and the related state case. McIntosh successfully persuaded his federal sentencing court that the United States had failed to prove the murders of the Rhyne family "was in furtherance" of his federal drug-trafficking conspiracy conviction, and therefore the Court did not apply the murder cross-reference to his sentencing guidelines. *See* Doc. No. 204 p.3. Subsequent to his federal sentencing, McIntosh entered into a plea agreement with North Carolina and pleaded guilty to three counts of accessory after the fact to first-degree murder. In those proceedings he took the contrary position, as he does in this Motion, arguing that the Rhyne murders were in furtherance of the federal drug-trafficking conspiracy.

In light of these "intervening factual developments" (his state plea and the related findings), McIntosh now argues his state convictions are relevant conduct to his federal drug-trafficking conspiracy conviction. Yet the facts, always known to McIntosh, never changed; his litigation position is all that changed. "Facts are stubborn things,"[3] and McIntosh knew the facts throughout

---

[3] "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence. – John Adams" William Gordon, *The*

the federal and state proceedings. He is proverbially asking to eat his cake then have it too: the conduct is related when it now suits his present argument but was unrelated when it earlier did not. And on review of the state sentencing transcript, it is clear that McIntosh's pleas were a negotiated settlement to achieve finality and closure for the family of the victims, and not a factual determination of his actual conduct. *See* Doc. No. 359-3, pp.3-4. Indeed, as recited by the North Carolina Court of Appeals in affirming the state conviction of his co-conspirator McDonald: "[e]vidence was presented that [McDonald] admitted that he and McIntosh abducted Kimberly and Hunter from their home. They were taken to a remote wooded area where McIntosh had formerly resided and were executed." [4] *See McDonald*, 180 N.C. App. at 639 S.E. 2d 142 (2006).

Furthermore in this "intervening factual developments" argument, McIntosh argues from a hypothetical that did not occur in this case: If he had been sentenced first in state court, this Court would have had to run its sentence concurrently with the state sentence. Of course, that is not how matters actually proceeded. This hypothetical also assumes that McIntosh would not have contested that the murder-related conduct was in fact relevant conduct to the federal drug offenses, a position contrary to the one that he *actually* took and prevailed on in federal court.

Next, McIntosh argues that even if 5G1.3(b) does not "technically" apply,[5] the Court should exercise its discretion and reduce his sentence as if it does. The Court recognizes its authority and discretion to do so, but declines. *See Concepcion*, 142 S.Ct. at 2400 ("The only limitations on a court's discretion to consider any relevant materials … in modifying that sentence are those set forth by Congress in a statute or by the Constitution."). Had proceedings progressed

---

*History of the Rise, Progress, and Establishment, of the Independence of the United States of America* 296 (1788).

[4] McIntosh cites some facts from the North Carolina Court of Appeal in *McDonald*, but conveniently neglects to mention this fact. *See* Doc. No. 359 pp. 10-11.

[5] McIntosh concedes that 5G1.3(b) does not apply in this case. *See* Doc. Nos. 359 p.11, 363 p. 4.

9

as suggested in McIntosh's hypothetical (state court conviction and sentencing first, federal sentencing second) the sentencing court would have almost certainly found that the murder cross-reference should have applied to McIntosh's guidelines; not just the accessory cross-reference, but the murder cross-reference, based on the nature of his state plea negotiations and the evidence adduced during the trial of McDonald. In that scenario, McIntosh would not have been eligible for the Amendment 782 reduction that the Court has already granted and would likely still be serving a federal life sentence. *See* Doc. No. 358.

Finally, the 3553(a) factors do not support another reduction in McIntosh's sentence. First, the serious of the offense strongly counsels against another reduction. McIntosh partook in a lengthy drug conspiracy which inundated the community with powder and crack cocaine. During this conspiracy, he possessed several firearms, including a double-barreled shotgun, a pump-action shotgun, three pistols, and a revolver. Along with this conduct, McIntosh participated in the abduction and murder of Kim Rhyne and her two-year-old son, Hunter. Kim Rhyne was shot nine times — seven times in her head and face. And Hunter Rhyne suffered a single gunshot wound to the back of his head. Whether McIntosh pulled the trigger is immaterial. What is relevant is that he admittedly participated in this heinous crime.

McIntosh's history and characteristics also weigh against a reduction. McIntosh has a criminal history category VI and prior convictions for: (1) Felony Possession of a Schedule II Controlled Substance; (2) Carrying a Concealed Weapon; (3) Possessing/Buying an Item with an Altered Serial Number; (4) Assault on a Female; (5) Possession with Intent to Distribute a Controlled Substance; (6) Distribution of a Controlled Substance; (7) Conspiracy to Possess with Intent to Distribute Schedule II Controlled Substances; (8) Conspiracy to Possess Firearms in furtherance of a Drug-Trafficking Offense; and (9) three counts of Accessory after the fact to First-

Degree Murder. *See* Doc. No. 354, 359. This lengthy criminal record suggests that he poses a danger to the community and has a proclivity for drugs and guns. The need for particular deterrence is therefore significant. Likewise, the need for general deterrence is substantial. Those who engage in large scale drug trafficking and the murder of an entire family must understand that they will be punished severely.

The Court does recognize that McIntosh's rehabilitative efforts weigh in his favor. The lack of disciplinary infractions is notable but little more than what is expected of every inmate. Similarly, the fact McIntosh has obtained his GED and is dedicated to the programs offered by the B.O.P. is laudable but does not come close to counter-weighing the other factors. The Court also notes that McIntosh maintains strong family support but again that cannot overcome the other factors the Court must consider.

In sum, having fully considered McIntosh's relevant conduct argument and the 3553(a) factors the Court will decline to exercise its discretion to reduce his sentence to, in effect, have it run concurrent to his state term of imprisonment. McIntosh's changed litigation position does not change the underlying facts and to reduce his sentence to have it "run concurrently" would, in this Court's view, impermissibly allow him to benefit from two irreconcilable positions.

**NOW THEREFORE IT IS ORDERED THAT** Defendant Russell Owen McIntosh's supplemental Motion for a Reduced Sentence under the First Step Act of 2018., (Doc. No. 359), is **DENIED**.

**SO ORDERED**

Signed: January 30, 2023

Kenneth D. Bell
United States District Judge